IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

STANSEL PROWSE ADC#658340        PLAINTIFF

V.     CASE NO. 5:19-CV-00115-JM-JTK

WENDY KELLEY, ET AL.        DEFENDANTS

**Brief in Support Plaintiff's Objection to Defendants Motion to Dismiss**

Plaintiff Stansel Prowse, Pro Se Litigant, submits this objection to Defendants motion to Dismiss.

## I. Introduction and facts

Ms. Prowse is a transgendered woman who is incarcerated in the Arkansas Department of Correction, Varner Supermax. On February 9, 2018, Ms. Prowse was diagnosed with Gender Dysphoria Disorder (GD) by Dr. William Giggleman, who is a licensed psychologist contracted with the ADC. (see PE 3, pg 3) On March 1, 2018, Ms. Prowse was seen by the ADC Gender Dysphoria Treatment Committee for a meeting which was conducted by Defendant Director of Mental Health and Correction Programs Bob Barker. (see PE 2, pg 2) At this meeting, Defendant Parker denied hormone therapy as treatment for Ms. Prowse' gender

dysphoria disorder, as well as any treatment for her disorder as well. (See PE 1, pg 1) Ms. Prowse then utilized the Unit level greivance procedure till it's exhaustion of remedies according to the PLRA. Ms. Prowse then filed a 42 U.S.C § 1983 suit against the Defendants Bob Parker and Rory Griffin as they violated Ms. Prowse' Eigth and Fourteenth Amended Constitutional Rights, both in their officials capacities after they acted with deliberate indifference to a serious medical need by depriving Ms. Prowse of adequate medical care. Defendant Parker did so by his own word of mouth. (See PE 1, pg 1) Defendant Griffin did so when she denied Ms. Prowse treatment in the final stage of the unit level greivance procedure. (See PE 4 pg 4) Both the defendants basis for the denial of treatment is based off a blanket band policy found in Administrative Directive (AD)#14-19 Gender Dysphoria and Intersex Inmates: (VI.)(A) "Treatment", which denies hormonal replacement treatment except for those with "self-inflicted genital mutilation". (See PE 5, Pg. B)

Ms. Prowse seeks injunctive relief and nominal damages in the form of: estrogen hormone therapy in the highest dose available, a razor script, and access to all state issued and commissary female clothing, cosmetics, and hygein items.

## II. Standard of Review

The defendants have called for the dismissal of the Plaintiff's civil suit under Rule 8(a)(2) of the Federal Rule of Civil Procedure, yet the Plaintiff has indeed satisfied the criteria for rule 8(a)(2). In her claim, the Plaintiff describes how she was subjected to deliberate indifference to a serious medical need which violates her 8th and 14th Amendmant Constitutional Rights. See Cuoco v. Moritsugu, 222 F.3d 99, 106 (2nd Cir. 2000); Brown v. Zavaras, 63 F.3d 967, 970 (10th Cir. 1995); Meriwether v. Faulkner, 821 F.2d 408 (7th Cir. 1987) The Plaintiff further provides physical entities in the form of Defendants Griffin and Parker, whom an action can and is being brought against in their official capacities, for nominal damages and injuctive relief. Thus providing the facts of how her rights were violated, who violated

them and the relief she seeks for the violations, as rule 8(a)(2) and (3) of the Federal Rule of Civil Procedure demands.

## III. Argument

A.

The 8th Amendment requires that prisons provide adequate health care to a prisoners' serious medical need. See, Estelle v. Gamble, 429 U.S. 97, 103 (1976) many courts have considered these factors when determining a serious medical need "(1) whether a reasonable doctor or patient would percieve the medical need in question as important and worthy of comment or treatment, (2) whether the medical condition significantly affects daily activities, and (3) the existance of chronic and substantial pain". See, Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003) "Additionally, courts may find a serious medical if a condition has been diagnosed by a physician as mandating treatment or, is so obvious that even a lay person would easily recognize the necessity of a doctor's attention." See, Schaub v. Vonwald, 638 F.3d 905, 914 (8th Cir. 2011); Leavit v. Corr. Med. Servs., Inc., 645 F.3d 484, 497 (1st Cir. 2011); Williams v. Rodriguez, 509 F.3d

Pg 5 of 11

392, 401 (7th Cir. 2007); Gee v. Pacheco, 627 F.3d 1178, 1192 (10th Cir. 2010); IKO v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) The Plaintiff was diagnosed with gender dysphoria disorder (GD) by a liscensed psychiatric professional on February 9, 2018. (See PE 3, pg 3) Gender Dysphoria (GD) - previously referred to as Gender Identity Disorder (GID) - presents a serious medical need that requires treatment to comply with the 8th Amendment. See, e.g., Cuoco v. Moritsuga, 222 F.3d 99, 106 (2d Cir. 2000); Brown v. Zavaras, 63 F.3d 967, 970 (10th Cir. 1995); Meriwether v. Faulkner, 821 F.2d 408 (7th Cir. 1987) According to the Administrative Directive (AD), #14-19 "Gender Dysphoria and Intersex Inmates", (III)(C) "Definitions": Sexual Reassignment Therapy - A treatment for Gender Dysphoria in which hormone medications or surgical procedures is utilized to alter a person's appearance in an attempt to adopt the physical characteristics of the opposite gender. (See PE 5, Pg. 2) Also according to AD #14-19 (III)(A) Definition: Gender Dysphoria - A mental disorder where individuals have a marked

Pg 6 of 11

difference between the individual's expressed/experienced gender and the one they were assigned (at birth), and it must continue for at least six (6) months. The also must be evidence of distress about this difference. (PE 5 pg 1A) The Plaintiff suffers from clinically significant distress in the form of sadness, anxiety, disconnection and self hatred that has led to self mutilation and several attempts of suicide in the past. The Plaintiff also experiences an impairment of functioning that makes every day activities like socializing with others + taking care of her body's physical and hygeinic needs a constant problem for her due to the ongoing psychologically inflicted distress about her gender and body and the gender she identifies with. These mental ailments are consequences of gender dysphoria and the only way that they're going to get better (the only way I'm going to get better) is to begin a transition into the gender the Plaintiff identifies as (a female). This transition begins with estrogen hormone replacement therapy as a treatment to gender dysphoria. A treatment that is

denied to any inmate presenting with gender dysphoria as a result to a blanket band policy found in AD#14-19 (VI.)(A) "Treatment", where it states "The initiation of sexual reassignment is impractical in a correctional setting", with the exception to inmates who have castrated themselves through "self-inflicted genital mutilation". (See P85, Pg 8) The Plaintiff was acted against with deliberate indifference to her serious medical need by the defendants who deprived her adequate medical care due to a blanket band policy & Thus violating her 8th and 14th Amendmant Constitutional rights to be free of cruel and unusual punishment and Equal protection. See, Fields, 653 F.3d at 557-58; De'Lonta, 330 F.3d 635; Allard v. Gomez, 9 F. App'x. 793, 795 (9th Cir. 2001); Houston v. Trella, No. 04-CV-1393, 2006 WL 2772748 *8 (D.N.J. Sept. 25, 2006); Barrett, 292 F. Supp. 2d at 286 The Plaintiff has been diagnosed with a serious medical need that plagues her with psychological distress between her expressed/experienced feminine gender

and the male gender she was assigned at birth which has led her to self mutilate and attempt suicide. The Plaintiff has an 8th Amendment right to adequate health care to her serious medical need. Hormone Replacement Therapy is adequate health care to her serious medical need as it will help relieve the distress caused by gender dysphoria and future self mutilation and attempts of suicide. Wherefore, the Plaintiff has a constitutional right to hormone therapy.

B. The Plaintiff has a Constitutional right to gender affirming clothing, cosmetics and hygein items

The Plaintiff was diagnosed with gender dysphoria by a liscensed psychiatric professional (see PE 3, P83) The 8th Amendment requires that prisons provide adequate health care to a prisoners' serious medical needs. See, Estelle v. Gamble, 429 U.S. 97, 103 (1976) Gender Dysphoria presents a serious medical need that requires treatment to comply with the 8th Amendment. See, See, Meriwether v. Faulkner, 821 F.2d 408 (7th Cir. 1987); Brown v. Zavaras, 63 F.3d 967, 970 (10th Cir. 1995) Gender affirming clothing, cosmetics and hygein items constitutes as

adequate health care to the Plaintiffs serious medical need. See, Soneeya, 851 F.Supp.2d at 250; Konitzer v. Frank, 711 F.Supp.2d 874, 908-11 (E.D. Wis. 2010); Soneeya, 851 F.Supp.2d at 246. Wherefore, the Plaintiff was diagnosed with a serious medical need and she has an 8th Amendment right to adequate health care for this need. Gender affirming clothing, cosmetics and hygein items constitutes as adequate health care as it will help relieve the harmfull psychological distress caused by gender dysphoria by allowing her groom herself in a fashion that reflects her expressed female gender, dressing like her expressed female gender and thus presenting herself as her expressed female gender physically which will allow her to heal from the damage caused from her disorder. The Plaintiff has a constitutional right to both state issued and commissary gender affirming female clothing, cosmetics and hygein items.

C. Respondeat Superior does not apply to defendants in this action

On March 1, 2018, Defendant Director of Mental Health and Correctional Programs Bob

Parker personally denied the Plaintiff access to adequate medical care to her serious medical need, by his own verbal word of mouth. (see PE 1, pg 1) Defendant Director of Health and Correctional Programs Rory Griffin denied the Plaintiff of adequate medical care to her serious medical need when the Plaintiff exhausted her ~~until~~ grievance procedure according to the PLRA through Rory Griffin. (see PE 4, pg 4) Both the defendants acted with deliberate indifference to the Plaintiff's medical need by basing their denials from a blanket band policy in AD#14-19, that prevents hormone therapy to inmates who have been diagnosed with Gender Dysphoria (GD) but have'nt been castrated by means of self-inflicted genital mutilation. (see PE 5, pg 8)

## IV. Conclusion

The Plaintiff respectfully requests the Courts to deny the Defendant's motion to Dismiss, and grant her with any and ~~relief~~ all relief that which she is entitled to.

Respectfully Submitted

Stansel Prowse se

ADC#658340 Stansel Prowse
Pro Se
Varner Supermax
P.O. Box 600
Grady, Arkansas
71644-0600

IGTT430
3GD

Attachment VI

INMATE NAME: Sage-Obama/Prowse, Ka'Torah/Stansel A.   ADC #: 658340   GRIEVANCE#:VSM18-01836

**CHIEF DEPUTY/DEPUTY/ASSISTANT DIRECTOR'S DECISION**

In this grievance dated July 5, 2018, you grieved that you should be receiving hormone treatment since you have been diagnosed with GID.

The unit mental health supervisor responded; " Your complaint is that you were diagnosed with gender dysphoria and you want to start receiving hormone therapy. You were seen in the psychiatric clinic by Mr. Giggleman on 2//09/18 and diagnosed with gender dysphoria. You were scheduled and seen by the Gender Dysphoria Committee back on 3/01/18. After the committee interviewed you and deliberated, Mr. Bob Parker documented the following: "The inmate was informed that hormone therapy was not clinically indicated nor recommended." Therefore, you were seen by the committee as desired but not prescribed hormone therapy. Consequently, I find no merit to this grievance."

You appeaied this by restating your complaint. You have received adequate and appropriate medical and mental health services that have been clinically indicated for you. As you were informed in the unit response hormone therapy was not clinically indicated nor recommended in your case.

This grievance appeal has no merit.

_____   9/24/18
Director                                   Date

Exhibit 1
Pg 2 & 6

IGTT420                                                                                                                               Attachment IV
3GH

INMATE NAME: <u>Sage-Obama/Prowse, Ka'Torah/Stansel A.</u>   ADC #: <u>658340B</u>   GRIEVANCE #: <u>VSM19-00459</u>

### HEALTH SERVICES RESPONSE TO UNIT LEVEL GRIEVANCE

<u>Your complaint is that you want to know the names of the committee members present on your Gender Dysphoria meeting and because I, Mr. Compton was present on this day, you want to know the names of the committee members from me. I, Mr. Compton was not an actual member of the Gender Dysphoria panel which was conducted by Mr. Bob Parker and do not recall the names of the members as I had no role in assembling this committee. My role was to ensure that you were brought to the VSM mental health office for this scheduled appointment back on 3/01/18. The committee introduced themselves to you during the meeting. Consequently, I find no merit to this grievance.</u>

*D. Compton*

Signature of Health Services                           <u>Rehab Program Manager</u>          <u>03/21/2019</u>
Administrator/Mental Health Supervisor or
Designee                                                                          Title                             Date

---

**INMATE'S APPEAL**

If you are not satisfied with this response, you may appeal this decision within five working days by filling in the information requested below and mailing it to the Deputy Director for Health & Correctional Programs along with the Unit Level Grievance Form. Keep in mind that you are appealing the decision to the original grievance. Do not list additional issues which were not part of your original grievance as they will not be addressed. Your appeal statement is limited to what you write in the space provided below.

WHY DO YOU DISAGREE WITH THE RESPONSE GIVEN ABOVE?




ADC#: <u>658340</u>      _____
                                  Date

_____
Inmate Signature

IGTT420  Attachment IV
3GH

INMATE NAME: <u>Sage-Obama/Prowse, Ka'Torah/Stansel A.</u>  ADC #: <u>658340B</u>  GRIEVANCE #: <u>VSM18-00428</u>

HEALTH SERVICES RESPONSE TO UNIT LEVEL GRIEVANCE

<u>Your complaint was that you had not been diagnosed or seen for Gender Dysphoria. Your desire is to be seen by the committee for this disorder specifically. You were seen in the psychiatric clinic and first diagnosed with Gender Dysphoria by Mr. Giggleman on 2/09/18. Before that, you were not diagnosed with this disorder and therefore; you did not meet the criteria to be seen by the committee. After you were diagnosed with Gender Dysphoria, you were scheduled to be seen. The Gender Dysphoria Committee Meeting was held with you on 3/01/18. Consequently, I find no merit to this grievance as you have been seen by the committee as you desired.</u>

*D. Compton*

Signature of Health Services  Rehab Program Manager  03/14/2018
Administrator/Mental Health Supervisor or
Designee  Title  Date

**INMATE'S APPEAL**

If you are not satisfied with this response, you may appeal this decision within five working days by filling in the information requested below and mailing it to the Deputy Director for Health & Correctional Programs along with the Unit Level Grievance Form. Keep in mind that you are appealing the decision to the original grievance. Do not list additional issues which were not part of your original grievance as they will not be addressed. Your appeal statement is limited to what you write in the space provided below.

WHY DO YOU DISAGREE WITH THE RESPONSE GIVEN ABOVE?

Inmate Signature  ADC#  Date

Plaintiff Exhibit 3 pg 3 of 6

IGTT420  Page 1 of 1

IGTT430
3GD

Attachment VI

INMATE NAME: Sage-Obama/Prowse, Ka'Torah/Stansel A. ADC #: 658340 GRIEVANCE#:VSM19-00054

**CHIEF DEPUTY/DEPUTY/ASSISTANT DIRECTOR'S DECISION**

In this grievance dated December 18, 2018, you grieved a matter that occurred back in March of 2018. This is well outside the time frame allowed per policy for an inmate to grieve a matter. As such this grievance should have been rejected at the unit level.

Therefore, this grievance appeal is found to have no merit.

Director _Rory Griffin_ (signature)    Date 2/28/19



**Arkansas Department of Correction**

PO Box 8707
Pine Bluff, AR 71611-8707
Phone: 870-267-6200
Fax:    870-267-6244
www.state.ar.us/doc

# ADMINISTRATIVE DIRECTIVE

**SUBJECT:** Gender Dysphoria and Intersex Inmates

**NUMBER:** 14-19                              **SUPERSEDES:** 12-06

**APPLICABILITY:** All ADC staff

**REFERENCE:** AR 833                          **PAGE 1 of 3**

**APPROVED:** Original signed by Ray Hobbs    **EFFECTIVE DATE:** 04/11/2014

---

### I. POLICY:

It is the policy of the Department to provide the appropriate treatment to inmates meeting the criteria for the current Diagnostic Statistical Manual (DSM) diagnosis of Gender Dysphoria.

### II. EXPLANATION:

This policy establishes the responsibilities, policies, and procedures to ensure a standard of care for the treatment of Gender Dysphoria.

### III. DEFINITIONS:

A. Gender Dysphoria (GD) - A mental disorder where individuals have a marked difference between the individual's expressed/experienced gender and the gender they have been assigned (at birth), and it must continue for at least six (6) months. There must also be evidence of distress about this difference.

B. Hormonal Replacement Treatment – A medical procedure in which male or female hormones are prescribed as a result of the patient's inability to produce an adequate amount of these hormones naturally.

ADC - VARNER UNIT LAW LIBRARY - 3781

Plaintiff Exhibit 5 pg     pg 5 of 6

  C. Sexual Reassignment Therapy – A treatment for gender dysphoria in which hormone medications or surgical procedures is utilized to alter a person's physical appearance, in an attempt to adopt the physical characteristics of the opposite gender.

  D. Sex Offender – A male or female convicted of a criminal sex offense.

  E. Intersex – A condition in which a person is born with external genitalia, internal reproductive organs, chromosome patterns, and/or an endocrine system that does not fit typical definitions of male or female.

## IV. GD RESPONSIBILITIES:

The Gender Dysphoria Management and Treatment (GDMT) Committee is responsible for determining the appropriate treatment referrals for identified GD and Intersex inmates.

## V. HOUSING:

A. Housing placement of diagnosed GD or Intersex inmates will be made on a case-by-case basis taking into consideration the inmate's health and safety and whether the placement would present management or security problems, giving serious consideration to the inmate's own views regarding his or her own safety. Both GD and Intersex inmates shall be given the opportunity to shower separately from other inmates.

B. GD and Intersex inmates shall not be housed in dedicated facilities, units or wings of any Unit within ADC on the basis of such identification or status. The Department shall insure that these inmates have the same access to programming, recreation, and other activities as other inmates.

## VI. TREATMENT:

  A. The initiation of sexual reassignment is impractical in a correctional setting. Self-inflicted genital mutilation or other forms of self-mutilation are contraindications for sexual reassignment treatment. No surgical procedures for the purpose of sexual reassignment will be provided to any inmate without approval of the GDMT committee following a finding of medical necessity by the medical director.

  B. Inmates entering the Department with prior surgical alteration of genitals and/or prescribed hormonal therapy procedures will continue to receive maintenance hormone replacements until their individual case is reviewed and assessed. Treatment with hormonal medications for the purpose of



Plaintiff Exhibit 5 pg.2   PP60-46